# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

ABRAHAM ALEJANDRO GONZALEZ
ALARCON,

    Petitioner,

v.             Civ. No.15-cv-00910 MV/LF

ADRIAN P. MARCIAS, El Paso Field Office
Director, Immigration and Customs
Enforcement, and RONALD WARREN,
Assistant Field Officer Director, Immigration
and Customs Enforcement,

    Respondents.


## MEMORANDUM OPINION AND ORDER

  **THIS MATTER** comes before the Court on Respondents Adrian P. Macias and Ronald Warren's (jointly "Immigration and Customs Enforcement" or "ICE") November 12, 2015 Motion to Dismiss [Doc. 8].  Petitioner Abraham Alejandro Gonzalez Alarcon filed a Response in Opposition on November 19 [Doc. 10].  This Court referred Mr. Gonzalez Alarcon's case to be heard by United States Magistrate Judge Laura Fashing on October 13, 2015 [Doc. 5].  The magistrate court issued a Report and Recommendations and ordered supplemental briefing on ICE's motion on May 9, 2016 [Doc. 11].  Neither party objected to the Report and Recommendation's finding on the issue of mootness, but both parties offered supplemental briefing on the issues of jurisdiction and exhaustion of administrative remedies [Docs. 14 & 17].

1

The Court, having considered the various briefs, attached materials, relevant law, and being otherwise fully informed, finds that the magistrate court's Report and Recommendations will be **ADOPTED**.  Regarding the issues raised by the parties' supplemental briefing, Mr. Gonzalez Alarcon's petition will be **DENIED** for failure to exhaust administrative remedies. Furthermore, even if Mr. Gonzalez Alarcon had exhausted administrative remedies, this Court would not have jurisdiction to hear his habeas petition under the REAL ID Act of 2005, which limits jurisdiction over such claims to the circuit courts of appeals.

## BACKGROUND

This habeas petition seeks to avoid the immigration system and challenges the jurisdiction-stripping procedures of the REAL ID Act of 2005 as applied to a United States citizen, asserting that, as a matter of statutory interpretation, the REAL ID Act does not apply to a United States citizen and that, if it did, the Act would be unconstitutional under Article I, Sec. 9 of the Constitution ("the Suspension Clause").

Mr. Gonzalez Alarcon's mother, Dalia Alarcon, was born in San Miguel, New Mexico, in 1973.  *Id.*  During her youth, Ms. Alarcon traveled back and forth between the United States and Mexico.  Doc 1-3, Aff. of D. Alarcon, at 1–2; Doc. 1-4, Aff. of B. Alarcon, at 1–2.  Petitioner Gonzalez Alarcon was born in Ciudad Juarez, Chihuahua, Mexico, in 1993.  Doc. 1, Petition, at 3.

On April 24, 2015, a United States Border Patrol agent apprehended Mr. Gonzalez Alarcon in Sunland Park, New Mexico.  *See United States v. Gonzalez Alarcon*, 15-MJ-1478, Doc. 1.  The United States had previously deported Mr. Gonzalez Alarcon to Mexico on January 11, 2014 and December 7, 2012.  *Id.*; Doc. 8-2, Warrant of Removal, at 4.  After his most recent

reentry, Mr. Gonzalez Alarcon was charged for a second time with illegally reentering the United States.  Doc. 8, MTD, at 2.

After this most recent detention, Mr. Gonzalez Alarcon hired an immigration attorney to pursue a derivative citizenship claim in addition to the attorney defending him in his criminal suit.  *Id.*; *see* Doc. 1, Petition, at 8–9.  On October 5, 2015, criminal counsel for Mr. Gonzalez Alarcon forwarded documents to the United States Attorney's Office seeking to demonstrate that Mr. Gonzalez Alarcon has a colorable claim to derivative United States citizenship based on his mother's citizenship.  Doc. 8-3, Email Correspondence and Affidavits, at 1–7.  As a result, the United States Attorney's Office dropped the criminal immigration charges pending against Mr. Gonzalez Alarcon.  *Id.*; *see United States v. Gonzalez Alarcon*, 15-MJ-1478, Doc. 15, Order Adopting Stipulated MTD.  The United States Attorney's Office never conceded that Mr. Gonzalez Alarcon is a United States citizen and never made any promises with regard to whether a stay of removal would be granted.  Doc. 8, MTD, at 3.  Instead, the United States Attorney's Office dismissed the criminal complaint against Mr. Gonzalez Alarcon so that he could pursue his citizenship claim through the immigration system.  *Id.*  However, rather than proceed with his citizenship claim, Mr. Gonzalez Alarcon filed the instant habeas petition two days after Magistrate Judge Yarbrough dismissed the criminal reentry charge, asserting that he was being illegally held in executive detention by ICE despite having the criminal charges against him dropped and having asserted a claim of United States citizenship.  *Id.*; *see* Doc. 1, Petition, at 1. Mr. Gonzalez Alarcon asserted that his continued detention violated the Fifth and Fourteenth Amendment of the United States Constitution's due process guarantee.  Doc. 1, Petition, at 7. Mr. Gonzalez Alarcon asserted his right to bring this petition under 28 U.S.C. § 2241 and the Suspension Clause of the United States Constitution.  Doc. 1, Petition, at 5.

Five days later, Mr. Gonzalez Alarcon was released from ICE custody.  Although Mr. Gonzalez Alarcon could have been deported to Mexico under the prior order of removal issued by an immigration judge, ICE allowed Mr. Gonzalez Alarcon to stay in the United States while he pursued his claim of United States citizenship.  Doc. 8 at 3.  Although Mr. Gonzalez Alarcon was released from custody, he remained subject to an order of supervision.  Doc. 11, R&R, at 2; *see* Doc. 8-1, Order of Supervision.  The order of supervision imposed various conditions on Mr. Gonzalez Alarcon's freedom, including a travel restriction.  *Id.*

Following the issuance of this order of supervision, ICE moved to have this habeas petition dismissed as moot on November 5, 2015.  Doc. 8, MTD.  Mr. Gonzalez Alarcon opposed this motion on November 19, 2015.  Doc. 10, Opp. to MTD.  On May 9, 2016, Magistrate Judge Laura Fashing entered a Report and Recommendation rejecting ICE's motion on mootness grounds but ordered supplemental briefing on the issues of jurisdiction and exhaustion of administrative remedies.  *See generally* Doc. 11, R&R; Doc. 12, Order for Supplemental Briefing.

Responding to this request for supplemental briefing, ICE provided an additional brief regarding the jurisdiction-stripping issue on May 25, 2016 and also briefly addressed the issue of exhaustion of administrative remedies.  Doc. 14, ICE Suppl. Br.  Mr. Gonzalez Alarcon responded to ICE's supplemental briefing on July 11, 2016.  Doc. 17, Resp. to ICE Suppl. Br.  Neither party objected to the findings of the magistrate court's Report and Recommendations on the issue of mootness.

## ANALYSIS

The Court considers three legal issues raised by the parties and the magistrate court below.  First, the Court addresses the findings by the magistrate court regarding the issue of

mootness, adopting the magistrate court's Report and Recommendations.  Second, the Court addresses the issue of administrative exhaustion, finding that Mr. Gonzalez Alarcon did not pursue the appropriate administrative remedies before filing his habeas petition.  Third, the Court finds that even if Mr. Gonzalez Alarcon had presented an administratively exhausted claim, that claim would need to be presented to the Tenth Circuit Court of Appeals in the first instance.

## I.      Report and Recommendations

When a party files timely written objections to the magistrate judge's recommendation, the district court will conduct a *de novo* review and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).   However, "a party's objections to the magistrate judge's report and recommendations must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Here, the magistrate court found that "[b]ecause Mr. Alarcon is subject to supervised conditions of release, which significantly restrict his movements, he remains in custody for the purposes of § 2241.  Thus, he continues to suffer an actual injury that can be redressed by a favorable decision and his case is not moot."  Doc. 11, R&R, at 4 (internal quotations omitted). In this case, neither party objected to the magistrate court's Report and Recommendations denying ICE's motion to dismiss on mootness grounds.  *See generally* Docs. 14, ICE Suppl. Br. & 17, Resp. to ICE Suppl. Br.  As a result, the Court adopts the magistrate court's findings on this issue.

## II.        Exhaustion of Administrative Remedies

"A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right[.]"   8 U.S.C. § 1252(d)(1).   The petitioner bears the burden of proving that administrative remedies have been previously exhausted before seeking judicial review.  *Echeverria-Polanco v. Mukasey*, 291 F. App'x 3, 5 (9th Cir. 2008); *see Lawson v. Attorney Gen. of the United States*, 226 F. App'x 84, 86 (3d Cir. 2007) ("[petitioner] failed to meet <u>his burden</u> to demonstrate that he exhausted the claim before the administrative agency.") (emphasis added) (citing 8 U.S.C. § 1252(d)(1)); *Harris v. Dep't of Homeland Sec.*, 18 F. Supp. 3d 1349, 1358 (S.D. Fla. 2014), *as amended* (May 8, 2014).  This is because when exhaustion of administrative remedies is a jurisdictional, rather than prudential, requirement, "it is the plaintiff's burden to plead and prove that the Court has jurisdiction." *Welsh v. Hagler*, 83 F. Supp. 3d 212, 217 (D.D.C. 2015).  As numerous courts have held, the exhaustion of administrative claims under § 1252(d)(1) is jurisdictional rather than prudential in nature.  *Harris*, 18 F. Supp. 3d at 1357 & 1357 n.6 (collecting authority); *see* RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 42.2 n.30 (7th ed. 2015) [hereinafter "FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE"] (collecting authorities noting that the exhaustion requirement of § 1252(d)(1) is not merely prudential).

Pursuant to § 1252(d)(1), the magistrate court ordered supplemental briefing on the issue of exhaustion of administrative remedies.  Doc. 12, Order re Suppl. Br., at 2.  Responding to this request, both parties drafted brief one-to-two paragraph arguments on the issue.  Doc. 14, ICE Suppl. Br., at 8; Doc. 17, Resp. to ICE Suppl. Br., at 13.  Upon reviewing the briefing, it is clear that Mr. Gonzalez Alarcon has not demonstrated that he pursued all the administrative options that are available to him "as of right" under § 1252(d)(1).  *See Schmitt v. Maurer*, 451 F.3d 1092,

6

1095 (10th Cir. 2006), *as modified on reh'g* (Oct. 19, 2006). The Tenth Circuit held in *Schmitt* that § 1252(d)(1) prohibits a federal court from reviewing an order of removal if there are alternative administrative procedures available by which the petitioner can challenge the basis for an order of removal. 451 F.3d at 1095. As the United States argued in its supplemental briefing, Mr. Gonzalez Alarcon has produced no evidence that he took affirmative steps to exhaust his available administrative remedies before submitting his habeas claim in federal court. Doc. 14, ICE Suppl. Br., at 7–8. In particular, this Court notes that throughout his immigration proceedings, criminal proceedings, and since his criminal charges were dropped, Mr. Gonzalez Alarcon has had the right to complete a Form N-600[1] application and has produced no evidence that he has ever filed one.

If, rather than through the instant habeas action, Mr. Gonzalez Alarcon had pursued his claim through an N-600 application to United States Citizenship and Immigration Services (USCIS), USCIS may have approved the N-600 application, which would have provided Mr. Gonzalez Alarcon a means to seek cancellation of his order of removal and closure of his immigration case. *See Schmitt*, 451 F.3d at 1095 (holding that § 1252(d)(1) requires exhaustion of administrative remedies when administrative remedies are available). As the Fourth Circuit held in *Johnson v. Whitehead*, a petition for judicial review may be barred when the petitioner fails to exhaust administrative remedies. 647 F.3d 120, 125 (4th Cir. 2011). In that case, habeas review was barred because the petitioner "failed to appeal the rejection of his Form N-600 Application for Certificate of Citizenship to the Administrative Appeals Unit of INS." *Id.*

---

[1] The Court takes judicial notice that the N-600 form is an administrative application to United States Citizenship and Immigration Services seeking certification of United States citizenship. *See* UNITED STATES DEP'T OF HOMELAND SECURITY, N-600 APPLICATION FOR CERTIFICATE OF CITIZENSHIP, *available at* https://www.uscis.gov/n-600 (last visited Sept. 20, 2016).

Under the reasoning elaborated above and the Fourth Circuit's ruling in *Johnson*, the Form N-600 constitutes an administrative procedure that must be exhausted.

Because Mr. Gonzalez Alarcon has presented no evidence that he pursued an N-600 application, Mr. Gonzalez Alarcon's petition must be dismissed.

### III.    Jurisdiction Under the Real ID Act of 2005

Even if Mr. Gonzalez Alarcon were to exhaust his administrative remedies by filing an N-600 application and pursuing any administrative appeals, it is the circuit court, and not this Court, which would have jurisdiction to conduct review of Mr. Gonzalez Alarcon's petition for judicial review in the first instance.  8 U.S.C. § 1252(b)(5).

It is undisputed that the REAL ID Act of 2005 amended 8 U.S.C. § 1252 to preclude United States district courts from exercising habeas jurisdiction over orders of removal in some instances and instead specifies that such claims should be brought directly in the courts of appeals.  *Compare* Doc. 14, ICE Suppl. Br., at 2, *with* Doc. 17, Resp. to ICE Suppl. Br., at 5.  As the Tenth Circuit held in *Schmitt*, "[t]he REAL ID Act clarified that petitions for review filed in the courts of appeals are the 'sole and exclusive means for judicial review' of most orders of removal.  Thus, district courts no longer have jurisdiction over habeas petitions challenging orders of removal."  451 F.3d at 1094.  However, the parties disagree regarding whether this case presents an exception to the REAL ID Act's exclusive jurisdiction provision as either a matter of statutory interpretation or constitutional law.

The review of district court jurisdiction over the writ of habeas corpus in the immigration context is certainly a complicated one.  As one prominent treatise has noted:

> Since the 1990s, the judicial review of immigration orders has been a source of
> significant political and legal controversy. Frequent legislative attempts to restrict
> the scope of judicial review of these orders—particularly the availability of
> habeas corpus—and judicial policing of those efforts in the shadow of the

Constitution's Suspension Clause have resulted in a complicated statutory scheme
as the network of relevant federal statutes.

CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL § 3664 (4th ed. 2016)
[hereinafter "FEDERAL PRACTICE AND PROCEDURE"]; *see also* FEDERAL HABEAS CORPUS
PRACTICE AND PROCEDURE § 42.1.   In particular, in the 1990s Congress enacted the
Antiterrorism and Effective Death Penalty Act (AEDPA) and the illegal Immigration Reform
and Immigrant Responsibility Act (IIRIRA), which, among other things "attempted to eliminate
judicial review of criminal aliens' removal orders" by restricting the access undocumented
immigrants would have to the writ of habeas corpus.   H.R. Conf. Rep. 109-72, at 175 (2005)
(conference report), *reprinted in* 2005 U.S.C.C.A.N. 240 (2005).

In *INS v. St. Cyr*, the Supreme Court "concluded" that the 1990s congressional statutory
schemes could not circumvent the writ of habeas corpus without violating the Suspension Clause
and that, as a result, "habeas jurisdiction under § 2241 was not repealed by AEDPA and
IIRIRA."  533 U.S. 289, 314 (2001).  In explaining its ruling, the Court began by observing that
the INS could prevail only by "overcom[ing] both the strong presumption in favor of judicial
review of administrative action and the longstanding rule requiring a clear statement of
congressional intent to repeal habeas jurisdiction." *Id.* at 298.   The Court then invoked the
constitutional avoidance cannon of statutory interpretation and explained that "if an otherwise
acceptable construction of a statute would raise serious constitutional problems, and where an
alternative interpretation of the statute is 'fairly possible,' . . . we are obligated to construe the
statute to avoid such problems."  *Id.* at 300 (internal citations omitted).   The Court applied this
cannon to the 1990s statutory schemes to strip the federal courts of habeas jurisdiction over
undocumented immigrants and held that: "neither provision [purportedly stripping federal courts

of habeas jurisdiction] speaks with sufficient clarity to bar jurisdiction pursuant to the general habeas statute." *Id.* at 312–13.

Congress responded to the Supreme Court's declaration regarding the scope of the habeas corpus writ in *St. Cyr* by passing the REAL ID Act of 2005, the statute at issue in this case. FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE at § 42.1.  In passing the Act, Congress attempted, to the extent permitted by the Constitution as interpreted by the Supreme Court in *St. Cyr*, to preclude federal district courts from exercising habeas review of undocumented immigrant claims by redirecting the loci of such claims to the federal courts of appeals.  *Id.*; *see* Gerald L. Neuman, *On the Adequacy of Direct Review After the Real Id Act of 2005*, 51 N.Y.L. SCH. L. REV. 133, 135–36 (2007) [hereinafter "Neuman"]; Aaron G. Leiderman, *Note: Preserving the Constitution's Most Important Human Right: Judicial Review of Mixed Questions under the REAL ID Act*, 106 COLUM. L. REV. 1367, 1373–76 (2006) [hereinafter "Leiderman"]. To Congress, the critical distinction between the new Act and the previous acts which would save the REAL ID Act from constitutional challenge was that:  "Unlike AEDPA and IIRIRA, which attempted to eliminate judicial review of criminal aliens' removal orders, [the REAL ID Act] would give every alien one day in the court of appeals, satisfying constitutional concerns." H.R. Conf. Rep. 109-72, at 175 (2005) (emphasis added).  Citing to *St. Cyr* directly, the official Conference Report on the bill provides that the REAL ID Act is intended to suspend habeas corpus in the district courts such that "[b]y placing all review in the courts of appeals, [the REAL ID Act] would provide an 'adequate and effective' substitute for habeas corpus."  *Id.* at 175; *see* Neuman, at 137.

The language of the REAL ID Act, 8 U.S.C. Section 1252(a)(5), entitled "Exclusive Means of Review" provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of title 28, or any other habeas corpus provision[.]

8 U.S.C. § 1252(a)(5).  Section (b) of that same provision provides the requirements for challenges to such orders of removal. *See generally* 8 U.S.C. § 1252(b).  Section 1252(b)(5) covers the procedure for claims of United States nationality such as the claim raised in this case:

> **(A) Court determination if no issue of fact**
> If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.
>
> **(B) Transfer if issue of fact**
> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of title 28.

8 U.S.C. § 1252(b)(5).  Thus, in cases where a petitioner makes a claim of United Sates citizenship challenging an order of removal, the proper procedure is to first file a claim with the court of appeals under 8 U.S.C. § 1252.  Then, if the court of appeals determines that a genuine issue of material fact about the petitioner's nationality is presented, the court of appeals "shall transfer the proceedings to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim[.]"  8 U.S.C. § 1252(b)(5)(B) (citing 28 U.S.C. § 2201, the Declaratory Judgment Act).  Once the court of appeals transfers the claim to the district court wherein the petitioner resides, that district court has the authority to

issue a declaratory judgment on the matter under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.  8 U.S.C. § 1252(b)(5)(B).

A.   <u>The REAL ID Act Strips Jurisdiction From Petitions Challenging Orders of Removal, Not Conditions of Custody.</u>

Mr. Gonzalez Alarcon makes three arguments pertaining to this Court's jurisdiction, all of which fail to circumnavigate the REAL ID Act of 2005.  First, Mr. Gonzalez Alarcon argues that he is challenging the conditions of his custody and not his prior order of removal.  Doc. 17, Resp. to ICE Suppl. Br., at 5–7 ("The REAL ID's elimination of habeas does not apply to review of or challenges to matters that are not part of removal orders.").  The Real ID Act only applies to challenges of orders of removal and does not preclude habeas challenges to conditions of custody.  *Essuman v. Gonzales*, 203 F. App'x 204, 212 n.8 (10th Cir. 2006); *see* H.R. Conf. Rep. No. 109–72, at 175 (2005); Neuman at 136 ("The main thrust of section 106 of the REAL ID Act is to channel judicial review of removal orders . . . back into the courts of appeals, while leaving review of detention-related issues in the district courts on habeas.").  Here, ICE characterizes Mr. Gonzalez Alarcon's petition as an indirect challenge to his order of removal.  Doc. 14, ICE Suppl. Br., at 3, 6 ("while Petitioner initially claims that he is attacking the 'custody issue' in this case that is 'independent' of any challenge to a removal order, he then states plainly—and, in Respondents' view, accurately—that he is 'challenging his detention which is intertwined with his claim to citizenship.'") (internal citations omitted).  Mr. Gonzalez Alarcon, by contrast, contends that his challenge is more properly framed as a challenge to his conditions of custody rather than a challenge to the removal order itself.  *See* Doc. 17, Resp. to ICE Suppl. Br., at 5–7 ("[h]abeas corpus is alive and well for other challenges that do not concern an appellate review of decisions made in a removal proceeding.").

As a general matter, the REAL ID Act is directed at "challenges to 'order[s] of removal, deportation, or exclusion,' and thus does not limit section 2241 habeas corpus review to challenge orders of detention" or to challenges to "proceedings that resulted in an order of 'removal, deportation, or exclusion' if the claim does not seek direct review of the order itself." FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 42.1; Neuman at 140 (it is a "foregone conclusion that detention challenges independent from the validity of the removal order are not covered by [the REAL ID Act]").  Thus, federal courts have held that the "jurisdiction-stripping provisions of the REAL ID Act" did not foreclose habeas corpus review of claims that are independent of any order of removal.  *See, e.g.*, *Singh v. Gonzales*, 499 F.3d 969, 972–73, 978–79 (9th Cir. 2007) (permitting habeas corpus review in district court for the "narrow claim of ineffective assistance of counsel"); *Kumarasamy v. Attorney General*, 453 F.3d 169, 172 (3d Cir. 2006) (finding that the REAL ID Act did not foreclose habeas review when a petitioner "is not seeking review of an order of removal.  Rather, he claims that his deportation was illegal because there was no order of removal"); *Franco-Gonzales v. Holder*, 767 F. Supp. 2d 1034, 1044–46 (C.D. Cal. 2010) (finding that the REAL ID Act did not foreclose review over a habeas corpus class action challenging continued detention without counsel, pending removal proceedings, because those claims are not "challenge[s] to a final order of removal as defined in 8 U.S.C. § 1101(a)(47)(B)").

However, when a petitioner indirectly challenges the basis of an order of removal, habeas review in the district court is improper.  *Essuman v. Gonzales*, 203 F. App'x 204, 211–12 (10th Cir. 2006) ("Because the challenge to his detention is grounded in the removal order rather than based on some inherent problem with the detention itself . . . the district court properly transferred the petition to this court, and we will treat it as a petition for review of the removal

order.  We have jurisdiction to review the latter under 8 U.S.C. § 1252(a).").  This generally occurs when the basis of the habeas petition, if affirmed, would necessarily invalidate the basis of the removal order itself.  *See Verde-Rodriguez v. Att'y Gen.*, 734 F.3d 198, 206–07 (3d Cir. 2013) ("Verde does not challenge the existence of his removal order, but alleges errors 'on which the validity of the final order are contingent,' and the relief he seeks would clearly be inconsistent with the order of removal. . . . Consequently, we have no jurisdiction[.]").  In *Martinez v. Napolitano*, the Ninth Circuit rejected the petitioner's habeas claims as indirect challenges to an order of removal because petitioner challenged findings that he was "inelligble for asylum, withholding of removal, and relief under the [Convention Against Torture]" which combined, "was the basis of [the Board of Immigration Appeal's] removal order."  704 F.3d 620, 623 (9th Cir. 2012).  The court stated that "none of these arguments survive as independent claims not inextricably linked to his order of removal.  Nor does this action avoid the clear language of 8 U.S.C. § 1252(a)(5), which eliminates jurisdiction over such claims."  *Id.* at 622–23.  Similarly, in *Delgado v. Quarantillo*, the Second Circuit rejected a habeas claim that would "force an adjudication on the merits of an I-212 application [for permission to reapply for admission after deportation or removal]" because the petitioner was "indirectly challenging her reinstated order of removal, and accordingly, we hold that section 1252(a)(5)'s jurisdictional bar applies[.]" 643 F.3d 52, 55 (2d Cir. 2011).  In short, when a habeas petitioner asserts a legal position which, if validated, would invalidate the legal basis for a removal order, such a claim cannot be presented in federal district court and must instead be presented to the appropriate court of appeals.

   In this case, Mr. Gonzalez Alarcon filed his petition for writ of habeas corpus because he "remained subject to a removal order [and therefore] was remanded to ICE custody" after the

United States dropped the criminal case against Mr. Gonzalez Alarcon.  Doc. 11, R&R, at 2.

Although ICE promptly released Mr. Gonzalez Alarcon from custody after Mr. Gonzalez

Alarcon filed his habeas petition, Mr. Gonzalez Alarcon remains subject to a removal order and,

as a result, ICE placed various conditions on his freedom.[2]  Doc. 8-1, Order of Supervision, at 1.

The Order of Supervision in this case is based on the legal authority that ICE has over Mr.

Gonzalez Alarcon pursuant to an order of removal.   It states: "On April 26, 2015 you were

ordered: Removed pursuant to proceedings commenced on or after April 1, 1997.  Because [ICE]

has not effected your deportation or removal during the period prescribed by law, it is ordered

that you be placed under supervision and permitted to be at large under the following conditions .

. . ."  *Id.*   Mr. Gonzalez Alarcon's petition, as presented to this Court, presents a challenge to

these conditions based on the claim that Mr. Gonzalez Alarcon is a United States citizen, a

finding which, if entered by the Court, would invalidate the basis for Mr. Gonzalez Alarcon's

order of removal.

Because Mr. Gonzalez Alarcon's petition, if granted, would invalidate the basis for his

order of removal, Mr. Gonzalez Alarcon's petition is best-characterized as a challenge to the

order of removal in this case within the meaning of the REAL ID Act.  As a result, had Mr.

Gonzalez Alarcon exhausted his administrative remedies, the jurisdiction-stripping provisions of

the REAL ID Act would apply.

---

[2] These conditions continue to constitute "custody" for habeas purposes.  *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1291 (10th Cir. 2001) ("Although the petitioners in this case are not being 'detained,' they are 'in custody' for habeas purposes because they are subject to final deportation orders"); *Peruch-Vicente v. Longshore*, 2015 U.S. Dist. LEXIS 46012 (D. Colo. Apr. 7, 2015) (same); *Galaviz-Medina v. Wooten*, 27 F.3d 487, 493 (10th Cir. 1994) ("At the time the United States immigration laws were overhauled in 1961, the 'in custody' requirement was much more literal than it is today. . . . Over the past thirty years, however, the custody concept in criminal cases has broadened considerably, and now includes many situations where the petitioner is not in actual physical custody. . . . This change in philosophy has likewise applied to habeas actions arising from immigration cases").

B.  The REAL ID Act Applies to Claims of Citizenship.

Mr. Gonzalez Alarcon also argues that this Court has jurisdiction to hear his habeas petition because the jurisdiction-stripping provisions of the REAL ID Act do not apply to United States citizens because of the prolific use of the word "alien" in the Act.  Doc. 17, Resp. to ICE Suppl. Br., at 8 ("[t]he entire statutory scheme for removal is based on one premise: that the person subjected thereto is an alien").  Mr. Gonzalez Alarcon is correct that the central jurisdiction-stripping provision of the Act does not specifically refer to "United States citizens." 8 U.S.C. § 1252(a).

However, this does not mean that the statute is inapplicable to Mr. Gonzalez Alarcon.  As described above, in passing the REAL ID Act, Congress elaborated a specific statutory procedure for review of citizenship claims.  8 U.S.C. § 1252(b)(5).  While § 1252 specifically refers to "a national of the United States" and not a "United States citizen," in immigration law, citizenship is a subcategory of nationality.  *See* 8 U.S.C. §§ 1401, 1408 (describing the relevant legal differences between citizenship and nationality).  The fact that Mr. Gonzalez Alarcon is asserting United States citizenship in his petition, and not United States nationality, does not change the applicability of the statutory scheme at issue here.  *See* 8 U.S.C. § 1101 ("The term 'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes a permanent allegiance to the United States.").

To hold that the REAL ID Act does not apply to United States citizens or nationals, when Congress created a specific statutory provision to deal with claims of citizenship or nationality subject to removal orders, would defy Congress' intent and violate the "plain meaning" cannon of statutory interpretation.  *See* NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND

STATUTES AND STATUTORY CONSTRUCTION § 46:1 (7th ed. 2015).   As a result, 8 U.S.C. § 1252(b)(5) does apply to Mr. Gonzalez Alarcon.

C.   The Application of the REAL ID Act to Mr. Gonzalez Alarcon Does Not Violate The Suspension Clause.

Finally, Mr. Gonzalez Alarcon takes the position that the Suspension Clause mandates this Court's jurisdiction.   Doc. 17, Resp. to ICE Suppl. Br., at 7, 12–13.   ("The Suspension Clause of the Constitution is [v]iolated if Petitioner is not [a]llowed to [c]hallenge his [d]etention and [r]emoval [t]hrough this Petition").   In adjudicating the scope of the Suspension Clause, the Supreme Court addressed the issue of habeas-stripping legislation in the immigration context in *INS v. St. Cyr*, holding that in the context of executive detention there is a "presumption favoring judicial review of administrative action."   533 U.S. at 298.   In that case, the Court indicated that Congress could repeal habeas jurisdiction without raising constitutional problems by making review in the courts of appeals an "adequate substitute" for habeas review.   *Id.* at 315 n.38.

Subsequently, in *Boumediene v. Bush*, the Supreme Court ruled directly on the applicability of the Suspension Clause to the Military Commissions Act, 28 U.S.C. § 2241(e), which was designed in part to strip federal courts of jurisdiction to hear habeas petitions by "aliens designated as enemy combatants and detained at the United States Naval Station at Guantanamo Bay, Cuba."   553 U.S. 723, 732 (2008).   There, the Court ruled in favor of the petitioners because the substitution of "procedures [that] are not an adequate and effective substitute for habeas corpus . . . operates as an unconstitutional suspension of the writ."   *Id.* at 733.   The Supreme Court then elaborated various procedural requirements which any habeas substitute must satisfy.   First, the Court stated that: "We . . . consider it uncontroversial . . . that the privilege of habeas corpus entitles the prisoner to [1] a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of

17

relevant law . . . . And [2] the habeas court must have the power to order the conditional release of an individual unlawfully detained[.]" *Id.* at 779. Second, the Court stated that a higher standard applies in cases of executive detention than in cases where an individual is detained following a determination by an independent judiciary. *Id.* at 782–85. Third, the reviewing court "must have the means to correct errors that occurred during the [proceedings resulting in detention.] This includes some authority to assess the sufficiency of the Government's evidence against the detainee. It must also have the authority to admit and consider relevant exculpatory evidence that was not introduced during the earlier proceeding." *Id.* at 786. The Court summarized these three procedural requirements by stating: "We … hold that when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority to make a determination in light of the relevant law and facts and to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787. Thus, after *Boumediene*, the key question for federal courts under the Suspension Clause is whether Congress has provided an adequate and effective substitute for federal district court review of a habeas corpus petition based on the *Boumediene* framework the Court elaborated.

Given the above framework for jurisdiction-stripping habeas legislation, many commentators have noted that in the immigration context *Boumediene* guarantees that whatever procedure Congress choses to supplant habeas review in the district courts must have habeas-like features or the statute will be susceptible to challenge under the Suspension Clause. *See, e.g.*, LARRY W. YACKLE, FEDERAL COURTS 557–59 (3rd ed. 2009) ("The more appellate the role of the courts of appeals within the REAL ID Act alternative framework, the more vulnerable that alternative is to constitutional challenge for failing to offer the fact-finding capabilities of federal

district courts exercising habeas jurisdiction."); FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE at § 42.1 ("As the courts have recognized in considering Suspension Clause challenges to the REAL ID Act, the statute's constitutionality turns upon whether the mechanism the Act creates to test the legality of an individual's detention is as broad in scope as federal habeas corpus review under 28 U.S.C. § 2241."); *see* Neuman at 134, 145 (describing the adequacy of alternative procedures pre-*Boumedine* and reaching similar conclusions).[3]   In this case, the judicial fact-finding required by the Suspension Clause is satisfied by the REAL ID Act's statutory scheme.

The Supreme Court has held that when a citizenship claim is at issue in habeas proceedings challenging removal, a petitioner must be allowed to introduce new evidence and a federal court must be allowed to review the evidence *de novo*.  *Ng Fung Ho v. White*, 259 U.S. 276, 283 (1922); *Agosto v. Immigration & Naturalization Serv.*, 436 U.S. 748, 753 (1978) (explaining that the *Ng Fung Ho* Court held "that a resident of this country has a right to de novo judicial determination of a claim to United States citizenship"); *Mondaca-Vega v. Lynch*, 808 F.3d 413, 435 (9th Cir. 2015) (same).  In drafting the REAL ID Act, Congress accommodated judicial fact-finding regarding United States citizenship claims "by providing de novo judicial review, with transfer to a district court for fact-finding if necessary, in section 242(b)(5) [codified at 8 U.S.C. § 1252(b)(5)]."  Neuman at 148–49.  *See also Mondaca-Vega*, 808 F.3d at 435 (citing 8 U.S.C. § 1252(b)(5)'s provision for de novo judicial review of citizenship claims). Were Mr. Gonzalez Alarcon to seek judicial review after having exhausted his administrative

---

[3] Other commentators have noted that the purpose of jurisdiction-stripping provisions is in tension with the Court's holding in *Boumediene*.  *See e.g.*, ERWIN CHEMERINSKY, FEDERAL JURISDICTION 182 (6th Ed. 2012); *see generally* Laurence H. Tribe, *Jurisdictional Gerrymandering: Zoning Disfavored Rights out of the Federal Courts*, 16 HARV. C.R.-C.L. L. REV. 129, 130 (1981).

remedies, under § 1252(b)(5), the proper procedure would be for the Tenth Circuit to first make a finding regarding whether a "genuine issue of material fact" is presented.   8 U.S.C. § 1252(b)(5)(A).   Then, if the Court were to determine that Mr. Gonzalez Alarcon had raised a triable issue of fact, the case likely would be transferred to the District of Oklahoma, where Mr. Gonzalez Alarcon resides, for the necessary judicial fact-finding required under the Suspension Clause.

In short, the Suspension Clause would not be violated because Congress has provided a means for a federal court to determine the particular factual issue here — whether Mr. Gonzalez Alarcon is a United States citizen — through 8 U.S.C. § 1252(b)(5).   As provided in the statutory scheme elaborated by Congress: "If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim."   8 U.S.C. § 1252(b)(5).   Thus, because the statutory scheme does not preclude judicial fact-finding regarding a citizenship claim, Congress has provided an adequate substitute to the writ of habeas corpus in this case and the Suspension Clause would not require this Court's jurisdiction.

## **CONCLUSION**

The Court adopts the magistrate court's Report and Recommendations and orders that Mr. Gonzalez Alarcon's Petition be **DISMISSED** for failing to demonstrate that Mr. Gonzalez Alarcon exhausted available administrative remedies.   Mr. Gonzalez Alarcon should file an N-600 application with USCIS and pursue any administrative appeals of his application.   If, having exhausted this process, Mr. Gonzalez Alarcon later seeks judicial review of his citizenship claim,

the REAL ID Act mandates that the petition be presented to the Tenth Circuit Court of Appeals in the first instance.

DATED this 29th day of September, 2016.

_____
MARTHA VAZQUEZ
United States District Judge

MONICA J. NEWCOMER MILLER      DAMON P. MARTINEZ
OLSI VRAPI      United States Attorney
NOBLE & VRAPI, PA
*Attorneys for Petitioner*

*By:* EDWARD HAN
Assistant United States Attorney
*Attorneys for Respondents*